**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

Filed/Docketed
Feb 20, 2014

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERTS, JAMES PATRICK and | ) | **Case No. 12-10540** |
| ROBERTS, JACALYN KRIS, | ) | **Chapter 7** |
| | ) | |
| Debtors. | ) | |
| | ) | |
| ROBERT ZILM and 5100 EL PASO | ) | |
| DRIVE. LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **Adv. No. 12-01036-R** |
| | ) | |
| JAMES PATRICK ROBERTS, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**</u>

Before the Court is the Motion for Summary Judgment and Brief in Support ("Motion")(Adv. Doc. 16) filed on October 15, 2012, by Plaintiffs Robert Zilm and 5100 El Paso Drive, LLC (collectively, "Zilm")[1]; Supplement to Plaintiffs' Motion for Summary Judgment and Brief in Support ("Supplement") (Adv. Doc. 31) filed by Zilm on October 21, 2013; Objection to Plaintiffs' Motion for Summary Judgment ("Objection") (Adv. Doc. 39) filed by Debtor and Defendant James Patrick Roberts ("Roberts") on December 2, 2013; Reply to Objection to Plaintiffs' Motion for Summary Judgment and Brief in Support ("Reply") (Adv. Doc. 40) filed by Zilm on December 16, 2013; and Defendant's Surreply

---

[1]The two plaintiffs are also referred to collectively using singular masculine pronouns (*i.e.*, he, him, his).

in Opposition to Plaintiff's [sic] Motion for Summary Judgment ("Surreply") (Adv. Doc. 42) filed by Roberts on December 23, 2013.

## I. Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and § 157(a) and (b)(2)(I), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II. Procedural History

On March 2, 2012, Roberts and his wife filed their joint petition for relief under Chapter 7 of the Bankruptcy Code, and obtained a Chapter 7 discharge of dischargeable debts on July 17, 2012. On May 23, 2012, Zilm timely filed an Adversary Complaint (Adv. Doc. 1) seeking a declaration that the prepetition debt represented by a Texas state court judgment entered in Zilm's favor and against Roberts is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), and/or (a)(6). Zilm seeks summary judgment on the § 523(a)(2)(A)[2] claim only, contending that the Texas judgment established Roberts' liability for fraud and the amount of damages arising therefrom, and thus Roberts is precluded from relitigating those issues before this Court.

---

[2]Section 523(a)(2)(A) provides, in relevant part –

A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud.

11 U.S.C. § 523(a)(2)(A).

In the Adversary Complaint, Zilm alleged, as background, that in 2007, he entered into a contract with a roofing company (which was remotely owned by Roberts) to repair the roof of a building that was either owned or occupied by Zilm; that Roberts (through employees) did not perform according to the contract but instead used different roofing materials and/or methods than set forth in the contract; that Roberts (through an employee) misrepresented the work performed on an invoice; that the work was substandard or defective and required repairs; and that Roberts directed the activities of the employees, or the employees acted as his agents, in making such misrepresentations and omissions.[3]  Specific to his § 523(a)(2)(A) claim that the debt to Zilm was obtained by fraud, Zilm further asserted that Roberts represented that he would replace and repair the existing 3-ply roof with another 3-ply roof, but never intended to do so; that he instead installed a single-ply torch granule roofing system; that the single-ply torch granule system was inferior to the 3-ply system; that Roberts intentionally misinformed Zilm of the lifespan of the roof system he installed; that Roberts had a duty to tell Zilm that the single-ply torch granule system was inferior; that Roberts thus fraudulently induced Zilm to enter into the contract; that Zilm relied on Roberts' misrepresentations to his detriment; and that Zilm was damaged thereby.[4]   Zilm further alleged that prior to Roberts' bankruptcy, Zilm had sued Roberts and three affiliated companies in Texas state court and obtained a money judgment (the "Final Default Judgment").[5] The Final Default Judgment was attached as an exhibit to the Adversary

---

[3]See Adversary Complaint, ¶¶ 10-33.

[4]Id., ¶¶ 38-45.

[5]Id., ¶¶ 34-37.

Complaint, and the findings of fact and conclusions of law set forth therein were incorporated by reference.[6]  It is undisputed that Roberts answered the suit and, after some procedural wrangling and discovery, the matter was to be tried in November 2011. Counsel representing Roberts and the three entities withdrew shortly before trial.  Five days before trial was to commence, one of the defendant entities, Roberts Roofing & Construction, LP,  filed a petition for Chapter 7 relief in the bankruptcy court for the Southern District of Texas.  A notice of the bankruptcy was filed in the Texas state court proceeding.  On the advice of counsel, Roberts did not appear at trial.[7]

Zilm appeared at trial, and on the same day, the Texas state court entered the Final Default Judgment against Roberts and the two non-bankrupt entities for breach of contract, violations of "certain provisions" of the Texas Deceptive Trade Practices – Consumer Protection Act (the "DTP Act"), and fraud.[8]  Zilm was awarded actual damages of $68,673.99 and consequential damages of $72,605.21 for the breach of contract.  Those damages were trebled–to $423,837.60–for "willfully, intentionally and knowingly violating certain provisions" of the DTP Act "leading to breach of contract."[9]  In addition, punitive damages in the amount of $206,021.97 were imposed against Roberts and the two entities

--------

[6]Id., ¶ 36.

[7]Roberts states that his attorney advised him that the company's bankruptcy filing stayed the trial, and that he relied upon the attorney's advice in not attending the trial. Affidavit of James Roberts, attached as an exhibit to the Objection, at 5, ¶ 13-14.

[8]Final Default Judgment, attached to the Adversary Complaint as Exhibit A.

[9]Id. at 2.

for "committing intentional fraud."[10] Finally, attorney fees in the amount of $50,525.00 were awarded to Zilm.[11]

In his Amended Answer to Adversary Complaint (Adv. Doc. 12), Roberts admitted that the Final Default Judgment was entered against him, but he denied all other material allegations in the Adversary Complaint.

At the request of the parties, this adversary proceeding was stayed, and on November 13, 2012, this Court granted relief from the automatic stay to permit Roberts to seek a bill of review[12] to vacate or modify the Final Default Judgment, and to permit Zilm to defend against the bill of review.[13] On October 4, 2013, the Texas state court denied Roberts' bill of review.[14] Zilm had asserted a counterclaim against Roberts in the bill of review action, seeking affirmative relief in the form of a declaratory judgment. Granting summary

---

[10]Id. at 3.

[11]Id.

[12]Under Texas law, a bill of review is "an equitable proceeding, brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for a new trial or direct appeal." Mabon Ltd. v. Afri-Carib Enterprises, Inc., 369 S.W.3d 809, 812 (Tex. 2012). "Ordinarily, a bill-of-review plaintiff must plead and prove: '(1) a meritorious defense to the underlying cause of action, (2) which the plaintiff[ ] [was] prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on [its] own part.'" Id., *quoting* Caldwell v. Barnes, 154 S.W.3d 93, 96 (Tex. 2004). "Courts narrowly construe the grounds on which a plaintiff may obtain a bill of review due to Texas's fundamental public policy favoring the finality of judgments." Id.

[13]Order Granting Debtor's Motion to Modify Automatic Stay, Main Case Doc. 58

[14]Final Summary Judgment entered by County Court at Law Number Three, El Paso County, Texas, in Case No. 2012-DCV06610, attached to the Supplement as Exhibit A, at ¶ 5.

judgment on Zilm's counterclaim, the Texas state court declared that the Final Default Judgment was valid and enforceable and that it "shall be issue preclusive as to the factual findings and conclusions set forth therein."[15]  Zilm was awarded additional attorney fees in the amount of $27,870.81, which the Texas state court declared were not subject to Roberts' discharge.[16]  The Final Summary Judgment, encompassing both the denial of the bill of review and the declaratory judgment in favor of Zilm, is hereinafter referred to as the "Second Judgment."

### III.   Contentions

Zilm asserts that the doctrine of issue preclusion bars Roberts from relitigating whether Roberts defrauded Zilm, rendering the debt represented by the judgment non-dischargeable under § 523(a)(2)(A) as a matter of law.[17]  Zilm also contends that the Texas state court's declaration that the Final Default Judgment "shall be issue preclusive as to the

---

[15]Id., ¶¶ 8-9.

[16]Id., ¶¶ 10-11.

[17]Zilm states that the issue before this Court on summary judgment is "whether [Roberts] can avoid the preclusive effect of the Judgment by failing to show up for trial on the merits after actively defending a case for 869 days."  Motion at 9.  If Zilm's argument is that the judgment was entered as a sanction against Roberts for "failing to show up for trial," one set of issue preclusion principles and cases applies.  On the other hand, Zilm also contends that judgment was entered on the merits after he presented sufficient evidence to establish fraud (Motion at 14-16), which would require Zilm to present a different set of undisputed facts to prevail on summary judgment.  The Court will evaluate whether Zilm has established the elements of either preclusion theory.

6

factual findings and conclusions set forth therein" cannot be challenged collaterally by Roberts under the Rooker-Feldman doctrine.[18]

Roberts contends, however, that Zilm has failed to demonstrate that any issue in the Texas state court proceedings was "actually litigated" because such determination cannot be made without reviewing the record of those proceedings. The record provided by Zilm consists of the Final Default Judgment, the state court docket sheet, and affidavits of Zilm's counsel, and notably, does not include a transcript of the trial. In the bill of review action, Zilm has tendered only the Second Judgment. Roberts dismisses the findings contained in the Final Default Judgment as conclusory and Zilm's counsel's affidavits as after-the-fact

_____

[18]Supplement at 5-6. The Court notes that Zilm did not obtain relief from the automatic stay to pursue affirmative relief; thus, the declaratory judgment is likely void. See Franklin Sav. Ass'n v. Office of Thrift Supervision, 31 F.3d 1020, 1022 (10th Cir. 1994). The stay was modified solely to allow Roberts to seek relief from the judgment and to permit Zilm to argue against the bill of review, which Zilm did successfully. Further action against Roberts was beyond the scope of the stay relief order.

In addition, the declaratory judgment action may have violated the discharge injunction, as it constituted a post-discharge action to establish and enforce a pre-petition debt. See 11 U.S.C. § 524(a)(2). The debt represented by the judgment will not be excepted from discharge unless and until Zilm prevails on one of his § 523(a) claims. See 11 U.S.C. § 523(c) (debtor is discharged of debt under § 523(a)(2), (4), and (6) "**unless** the court determines such debt to be excepted from discharge"); Buke, LLC v. Eastburg (In re Eastburg), 447 B.R. 624, 631-32 (B.A.P. 10th Cir. 2011) ("debts are **'presumptively discharged' until the bankruptcy court makes a determination regarding dischargeability**")(emphasis original) (*dicta* because BAP affirmed bankruptcy court on other grounds).

Because Roberts has not argued that the declaratory judgment is void, however, and Zilm has not been afforded an opportunity to be heard on the issue, the Court will address Zilm's Rooker-Feldman argument herein, reserving the issue of the validity of the declaratory judgment for later determination if necessary.

attempts to create an evidentiary record.[19]  Because Zilm's counsel lacks personal knowledge of facts material to the fraud claim, Roberts contends the affidavit is inadmissible.  Roberts also submits his own affidavit to counter Zilm's counsel's version of the material facts.

## IV.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] The Court must view the record on summary judgment in the light most favorable to, and all reasonable inferences are to be drawn in favor of, the non-moving party–in this case, Roberts.[21]

## V.    Issue Preclusion

"The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.' 28 U.S.C. § 1738.  This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered."[22]  Accordingly, this Court must determine to what extent, if any, the Final Default Judgment is preclusive under Texas law.

---

[19]Surreply at 4.

[20]Fed. R. Civ. P. 56(a), made applicable herein by Bankruptcy Rule 7056.

[21]See Gross v. Hale-Halsell Co., 554 F.3d 870, 875 (10th Cir. 2009).

[22]Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).

Because the Final Default Judgment does not purport to adjudicate the claim before this Court, *i.e.*, dischargeability of the debt under § 523(a)(2)(A), the rules of claim preclusion (also known as *res judicata*) do not apply.[23]  In certain circumstances, elements of a dischargeability claim can be established by issue preclusion, however.[24]  Texas generally follows the RESTATEMENT (SECOND) OF JUDGMENTS in its preclusion jurisprudence.[25]  The RESTATEMENT distills the general rule of issue preclusion as follows:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination [of the issue] is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.[26]

According to Texas case law, "[b]efore applying collateral estoppel, the court must determine that the facts asserted in the second proceeding were fully and fairly litigated in the first, that the facts were essential to the judgment, and that the parties were cast as adversaries in the first action."[27]  Roberts contends that facts essential to the Final Default Judgment were not actually litigated and/or were not fully and fairly litigated.  Zilm, as the

---

[23]See Pancake v. Reliance Ins. Co. (In re Pancake), 106 F.3d 1242, 1244 (5th Cir. 1997), *citing* Brown v. Felsen, 442 U.S. 127 (1979).

[24]See Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991) ("principles of collateral estoppel apply in bankruptcy proceedings").

[25]Gober v. Terra+ Corp. (In re Gober), 100 F.3d 1195, 1204, n.6 (5th Cir. 1996) (collecting cases).

[26]RESTATEMENT (SECOND) OF JUDGMENTS (hereinafter "RESTATEMENT") § 27 (1982).

[27]Gober, 100 F.3d at 1201, *citing* Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816, 818 (Tex. 1984) (*citing* RESTATEMENT § 27).

party asserting that issues have been conclusively litigated and determined in the Texas state court action, has the burden of proving that contention.[28]

The Texas state court labeled its order a "default judgment." The facts and legal conclusions of a default judgment generally are not "actually litigated," but rather are deemed confessed. In a comment, the RESTATEMENT makes the point that no issues are actually litigated when a judgment is entered by confession, consent, or default, reasoning that a party may have valid reasons for not contesting an issue (*e.g.*, inconvenient forum, minimal amount at issue), and that affording preclusion to issues arguably determined by such judgments would "discourage compromise, . . . decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus . . . intensify litigation."[29] Texas law denies collateral estoppel effect to default judgments entered upon a defendant's failure to answer a plaintiff's complaint; by not contesting the petition, the defendant is deemed to have admitted the factual allegations.[30] Facts not in controversy are not "litigated." Roberts answered Zilm's complaint, however, so the "default judgment" against Roberts was not based upon deemed admissions.

It appears from the context of the judgment that Roberts' absence from trial constituted the default. Under Texas law, when a defendant has answered the petition, but does not appear at trial, the factual allegations set forth in the petition that were not admitted–

---

[28]RESTATEMENT, § 27 *cmt f.*

[29]RESTATEMENT § 27, *cmt e.*

[30]See Gober, 100 F.3d at 1204, *citing* Stoner v. Thompson, 578 S.W.2d 679, 682-83 (Tex. 1979).

in the answer or otherwise–are still at issue.  Although Texas courts characterize this situation – answering but not appearing at trial– as a "post-answer default,"[31] it is not a true default at all.  A defendant is not required to present evidence at trial, cross-examine plaintiff's witnesses, or make legal arguments.  A defendant's absence is not an admission of any allegations, nor is it a waiver of the right to insist that the plaintiff meet its burden of proof.  When a defendant has answered and denied material allegations, the entire burden rests with the plaintiff to establish with admissible evidence the defendant's liability on the asserted claim, as well as damages, even if the defendant fails to attend the trial.[32]  Texas law recognizes this and holds that a plaintiff must present "sufficient evidence to meet his burden of proof at trial" in order for findings in a post-answer default judgment to carry issue-preclusive weight.[33]  This assures that "the facts asserted in the second proceeding were fully and fairly litigated in the first."[34]

Zilm contends that the Final Default Judgment establishes on its face that he presented sufficient evidence to meet his burden of proof at trial.  The judgment provides–

---

[31]See Garner v. Lehrer (In re Garner), 56 F.3d 677, 680 (5th Cir. 1995) (abrogated on other grounds)(applying Texas law and citing Stoner, supra); Crain v. Limbaugh (In re Limbaugh), 155 B.R. 952, 957 & nn.6-7 (Bankr. N.D. Tex. 1993) (collecting cases).

[32]Limbaugh, 155 B.R. at 957 ("By filing an answer on the merits, defendant places all issues in dispute, thus requiring plaintiff to offer evidence and prove his case at trial, irrespective of whether defendant appears and participates.").

[33]Gober, 100 F.3d at 1204, citing Stoner, 578 S.W.2d at 682.  See also Pancake, 106 F.3d at 1244; Staton Corporate & Casual v. Mileski (In re Mileski), 416 B.R. 210, 218-19 (Bankr. W.D. N.C.  2009) (determining preclusive effect of Texas judgment).

[34]Gober, 100 F.3d at 1201.

Zilm put on evidence supporting their [sic] allegations against Roberts [note: the term "Roberts" is defined in the judgment as Roberts Roofing & Construction CS, LP, Benaiah, LLC and James P. Roberts, individually] including evidence of Roberts' breach of contract, common law fraud, violations of the Texas Deceptive Trade Practices Act, and evidence supporting damages sustained by Zilm directly therefrom.  Specifically, Zilm put on evidence from which the Court makes the following findings:

*****

6.      Roberts Roofing & Construction, CS, LP breached the contract with . . . Zilm resulting in actual damages sustained by Zilm totaling $68,673.99 and consequential damages totaling $72,605.21.

7.      Benaiah, LLC, as the general partner of Roberts Roofing & Construction, CS, LP is therefore responsible for all damages sustained by . . . Zilm totaling $68,673.99 in actual damages and consequential damages totaling $72,605.21.

8.      James Patrick Roberts (Individually) in addition to committing fraud, is also responsible for the actual damages totaling $68,673.99 and consequential damages totaling $72,605.21 sustained by . . . Zilm stemming for [sic] the breach of contract.

9.      As a result of willfully, intentionally and knowingly violating certain provisions of the Texas Deceptive Trade Practices–Consumer Protection Act Roberts Roofing & Construction, CS, LP, Benaiah, LLC and James Patrick Roberts (Individually) were found to be liable to . . . Zilm for treble damages for actions leading to breach of contract, resulting in the sums of $68,673.99 and $72,605.21 totaling: $141,279.20, with that sum being trebled for a total aggregate sum of damages to be awarded of $423,837.60.

10.      Roberts Roofing & Construction, CS, LP, Benaiah, LLC and James Roberts (Individually) were each found to have committed intentional fraud on . . . Zilm for which the sum of $206,021.97 was established as reasonable punitive damages.

*****

12.      Pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, the Court finds and determines that . . . Zilm [is] entitled to recover their [sic] reasonable and necessary attorney's fees and costs of court.  The Court further

finds and determines that the reasonable amount . . . is the total sum of $50,525.00.[35]

Judgment was entered accordingly against Roberts Roofing & Construction CS, LP, Benaiah, LLC, and James P. Roberts, jointly and severally, in a total amount of $680,384.57 plus post-judgment interest.[36]  Finally, the court noted that Zilm's claims against Roberts Roofing & Construction, LP, had not been adjudicated because prosecution was stayed by its bankruptcy filing.[37]

Although the Final Default Judgment contains a finding that Roberts "committed intentional fraud," bankruptcy courts have been instructed to look beyond labels given by state courts and determine the "true nature" of a judgment to determine whether the set of facts presented to the state court would result in non-dischargeable debt under Section 523 of the Bankruptcy Code.[38]  This exercise cannot be performed unless a "sufficiently detailed" record is presented to support the judgment.[39]  "Collateral estoppel applies in bankruptcy

_____

[35]Final Default Judgment at 1, and at ¶¶ 6-10, 12.  The court also found that Roberts and his co-defendants had ample notice of the trial and failed to appear; that "[e]xtensive discovery, depositions, research and analysis have transpired during the course of this lawsuit concluding with the withdrawal and substitution of three separate sets of counsel for Defendants, the most recent of which occurred" approximately two weeks before trial; and that "[n]otwithstanding the withdrawal of Defendants' counsel, each Defendant was made aware of the scheduled trial date." Id., ¶¶ 2-5.

[36]Id. at 4.

[37]Id.

[38]See Dennis v. Dennis, (In re Dennis), 25 F.3d 274, 278 (5th Cir. 1994).  See also Fielder v. King, 103 F.3d 17, 19 (5th Cir. 1997).

[39] Sheerin v. Davis (In re Davis), 3 F.3d 113, 115 (5th Cir. 1993), *quoting with approval* In re Church, 69 B.R. 425, 430 (Bankr. N.D. Tex. 1987).

courts only if, *inter alia*, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question – that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue – and the facts supporting the court's findings are discernible from that court's record."[40]

_____

In Sheerin, the debtor appealed the bankruptcy court's order excepting from discharge a debt previously reduced to judgment in a Texas state court, contending that the creditor did not produce the entire record of the state court trial and therefore the bankruptcy court erred in giving issue preclusive effect to the judgment. The Fifth Circuit found that the record before the bankruptcy court–which consisted of the state court judgment entered after a jury trial, the jury instructions, the jury's special findings, and the opinion of the appellate court which detailed the relevant evidence before the trial court and jury in affirming the judgment–was sufficiently detailed to support a finding of fraud and to preclude debtor from relitigating the issue. Id. at 115-16.

[40]Dennis, 25 F.3d at 278. See also Patino's Inc. v. Poston (In re Poston), 735 F.2d 866, 869 (5th Cir. 1984) (state court default fraud judgment "must be supported by detailed facts sufficient as findings to meet the federal test of nondischargeability and allow the bankruptcy court to discern from the record the subsidiary facts upon which the false pretense allegation was made") (internal quotation marks and citation omitted).

See also Pancake, *supra*, wherein the Fifth Circuit held summary judgment based on issue preclusion inappropriate where "the record before us fails to demonstrate that the state court conducted a hearing in which [plaintiff] met its burden of proving that [defendant/debtor] defrauded [plaintiff's insured]. The only indication that the state court held a hearing comes from the final judgment, in which the court states that it heard 'the evidence and arguments of counsel.' That statement alone does not establish that [debtor] received a full and fair adjudication on the issue of fraud. We therefore conclude and hold that the state court judgment does not have preclusive effect." Id., 106 F.3d at 1244.

See also Mileski, *supra*, where a bankruptcy court concluded that a Texas post-answer default judgment had no preclusive effect where the record of the Texas proceeding did not support a fraud claim that was non-dischargeable under § 523(a)(2)(A). The allegations in the complaint lacked "details . . . about how [debtor] is supposed to have committed fraud on the plaintiff 'in their dealings.' Certainly, there is none of the 'who, what, where, when' factual details required under Federal Civil Procedure Rule 9(b) and its state law analogs to plead fraud." In addition, the evidence presented at trial (gleaned from affidavits) "describe a claim for intentional breach of contract and false representations made after reaching an agreement . . . [which] do not establish fraud of the sort contemplated by § 523(a)(2)(A)." Id., 416 B.R. at 222.

The RESTATEMENT advises that "[i]f it cannot be determined from the pleadings and other materials of record in the prior action what issues, if any, were litigated and determined by the verdict and judgment, extrinsic evidence is admissible to aid in such a determination. Extrinsic evidence may also be admitted to show that the record in the prior action does not accurately indicate what issues, if any, were litigated and determined."[41]

According to Zilm, his trial counsel, Edward DeV. Bunn, Jr., presented evidence to the Texas state court at trial by means of an offer of proof.[42]  Zilm has not provided this Court with a transcript of the proffer, however.  Instead, Zilm relies on an affidavit in which Mr. Bunn lists allegations he contends he *would have or could have proven* at trial.  He does not describe the *evidence* he would have introduced to support those allegations, however.[43]  Mr. Bunn does not identify any particular witness who would have testified through personal knowledge to any particular allegation stated in the affidavit.  Moreover, the allegations themselves are vague, equivocal, conclusory, and sometimes contradictory, and are especially ambiguous as to the critical element of scienter and the grounds for and calculation of damages.

Accordingly, the affidavit does not establish what evidence Mr. Bunn *actually* presented to the Texas state court.  Did Mr. Bunn advise the court who would have testified to each essential fact, and present the substance of such testimony? Or did he merely recite

---

[41] RESTATEMENT § 27, *cmt f.*

[42] See Affidavit of Edward DeV. Bunn, Jr., attached to Motion as Exhibit C, at 3.

[43] See Affidavit of Edward DeV. Bunn, Jr., attached to the Reply as Exhibit A, at 1 (Mr. Bunn stated that "[t]he offer of proof consisted of a proffer of evidence that the Plaintiff would present to prove the following facts:" followed by list of 60 allegations).

the allegations set forth in the affidavit?  Were all the documents mentioned in the affidavit (the contract, addendum, adjuster's report, list of work, invoice, expert report) admitted into evidence and considered by the Texas state court?  Or did the Texas state court simply accept Mr. Bunn's characterization of the contents of the documents and Mr. Bunn's conclusions as to their legal effects?  In short, did the Texas state court make findings on each element of fraud after a meaningful assessment of admissible evidence?

While extrinsic evidence, such as the affidavit submitted by Zilm, may be admitted to supplement or explain the record in the prior proceeding in order to establish what issues, if any, were before the court and were actually litigated at trial, no actual record of the trial has been provided to this Court.  Moreover, Mr. Bunn's affidavit does not even purport to establish what is in the trial record.

In the absence of a record of the trial in a prior proceeding, the fact that an issue was actually litigated in a prior proceeding may also be substantiated by a "reasoned opinion" of the trial or appellate court.[44]  The Final Default Judgment lacks the basic components of a reasoned opinion–that is, specific factual findings and a thorough legal analysis.  The "finding" that "Roberts  [was] . . . found to have committed intentional fraud on . . . Zilm" is not sufficiently detailed – in facts or analysis – to sustain a finding by this Court that the issue of fraud was actually litigated.[45]

---

[44]State Farm Fire and Cas. Co. v. Fullerton, 118 F.3d 374, 382 (5th Cir. 1997) (applying Texas law).  See, e.g., Sheerin, 3 F.3d at 114-16 (the detailed opinion of the appellate court, with the entire record before it, articulated the evidence presented at trial that supported elements of the claim).

[45]The Fifth Circuit, in Poston, upheld a bankruptcy court's refusal to accord issue preclusive effect to a Texas judgment that "did not contain detailed facts sufficient as

Zilm also claims that because Roberts had a "full and fair opportunity" to defend the fraud claim in the prior proceeding, but chose not to appear at trial, he should be precluded from defending the fraud claim herein.[46]  The Court notes that the RESTATEMENT requires that the facts sought to be established by a prior adjudication be "actually litigated," meaning, simply, that the party with the burden of proof in the prior proceeding must have met its burden of proof.  The party with the burden of proof at trial is not excused from that burden when the other party fails to appear at trial.  Thus, contrary to Zilm's implication, the fact that Roberts had a "full and fair opportunity to litigate" whether he committed fraud, but failed to appear at trial, does not excuse Zilm from proving that the fraud claim was "actually litigated."  A "full and fair opportunity to litigate" is not a substitute for the "actually litigated" requirement.

A party may be *estopped* from insisting that the "actually litigated" element of issue preclusion be satisfied, however, where a default judgment is entered against that party as a sanction or penalty.  In such cases, the sanctioned party had a "full and fair opportunity" to litigate the issues.  There is ample justification for precluding a party that abused the litigation process from relitigating an issue determined by a default judgment entered as a sanction.  First, because the ultimate penalty of an adverse judgment ordinarily may be

---

findings to meet the federal test of nondischargeability; it contained merely a conclusory statement that the plaintiff was entitled to judgment on a false-pretense cause of action." <u>Poston</u>, 735 F.2d at 869.

[46]<u>See</u> Motion at 13-14.

imposed only after due notice that such a sanction is possible,[47] the party will have had an

opportunity to defend itself against the charges of litigation malfeasance, and only upon

specific findings of contempt, discovery abuse, or other deliberately obstructive conduct may

such a default judgment be entered.[48] Second, permitting litigants who have been adjudicated

as abusive to avoid the preclusive consequences of a penalty default judgment would reward

(and perhaps encourage) bad behavior.[49] Finally, although issues deemed adjudicated by a

default judgment are normally not given preclusive effect because the contested facts or legal

---

[47]See Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992) (dismissal (or default judgment) as a sanction for discovery violation is reserved for cases of extreme misconduct; before choosing a terminal sanction, the court should consider the amount of prejudice to the other party and interference with judicial process; culpability of litigant (as opposed to counsel); whether the party was warned in advance of the sanction for non-compliance; and efficacy of lesser sanctions, which should be evaluated on the record).  See also Bush v. Balfour Beatty Bahamas, Ltd (In re Bush), 62 F.3d 1319, 1325 (11th Cir. 1995) (debtor had "ample warning" that his failure to cooperate in discovery could result in a default judgment); FDIC v. Daily, 973 F.2d 1525, 1531 (10th Cir. 1992) ("A judgment imposing sanctions under Rule 37 in violation of the offending party's due process rights is void. . . . The process due depends on the severity of the considered sanctions.  The concerns posed by a dismissal (or entry of a default judgment) are greater than those presented by the assessment of counsel fees against attorneys.") (citations omitted).

[48]A judgment entered as a penalty for abusive or obstreperous litigation behavior is sometimes called a "death penalty sanction."  See Guion v. Sims (In re Sims), 479 B.R. 415, 419 (Bankr. S.D. Tex. 2012), aff'd 2013 WL 6442132 (5th Cir. 2013) (citing BLACK'S LAW DICTIONARY 1459 (9th ed. 2009)).  BLACK'S defines "death penalty sanction" as follows:

> A court's order dismissing the suit or entering a default judgment in favor of the plaintiff because of extreme discovery abuses by a party or because of a party's action or inaction that shows an unwillingness to participate in the case. Such a sanction is rarely ordered, and is usu[ally] preceded by orders of lesser sanctions that have not been complied with or that have not remedied the problem.

Id.

[49]See, e.g., Bush, 62 F.3d at 1324.

arguments have not been "determined" by the court after presentation of evidence and argument by the parties, a party that deliberately obstructs the progress of litigation can be said to have waived or forfeited the "actually litigated" element of preclusion.  While the sanctioned party had a full and fair opportunity to defend on the merits, it chose to pervert the litigation process instead.

Nothing in the record before this Court establishes that the Final Default Judgment was entered as a sanction for abuse, obstruction, or refusal to obey court orders, so the "full and fair opportunity to litigate" exception to the "actually litigated" requirement is not applicable in this case.[50]  Participating fully in the litigation but failing to appear at trial is

---

[50]The cases cited by Zilm generally support the proposition that the "actually litigated" element can be satisfied by a "full and fair opportunity" to defend *only* when a default judgment is entered as a sanction or penalty.  For instance, in Gober, the trial court sanctioned the defendant for discovery abuse, and after defendant failed to obey the sanctions order, the trial court set a hearing which defendant did not attend; as a result, the court struck the defendant's answer, dismissed his counterclaims, heard evidence on damages, and entered judgment.  The judgment was determined to be preclusive, even though defendant did not appear at the sanctions and damages trial, because defendant had "repeatedly impeded the course of the proceedings by refusing to comply with discovery and by defying court orders.  The RESTATEMENT contemplates that 'even if [an issue] was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate.'" Gober, 100 F.3d at 1205-06.

Likewise, in FDIC v. Daily (In re Daily), preclusion was applied to bar relitigation of a fraud claim where the debtor/defendant refused to respond to discovery, defied an order compelling discovery, and otherwise frustrated and thwarted the FDIC's ability to proceed with its action.  Id., 47 F.3d 365, 368 (9th Cir. 1995) (applying federal preclusion law).  The Eleventh Circuit held the same in Bush, where default judgment for fraud was entered as a Rule 37 sanction for "deliberate refusal to participate in discovery" and for engaging in "attempts to frustrate the effort to bring the action to judgment."  Bush, 62 F.3d at 1325 (applying federal preclusion law).  See also Sims, 479 B.R at 422 (a death penalty default judgment, entered for egregious litigation conduct and violations of court orders, was preclusive in later dischargeability proceeding) (applying Texas law).

not, in and of itself, sanctionable behavior.[51]  As stated above, Zilm, as plaintiff, carried the burden of proving his claims at trial, and Roberts' non-appearance neither increased nor decreased that burden.  In any event, the Final Default Judgment does not mention the word "sanction" or "penalty" or describe any such conduct on the part of Roberts.

Zilm has not sustained his burden of establishing, with undisputed evidence, that all elements of his § 523(a)(2)(A) claim were actually litigated in the Texas state court action and determined by the Final Default Judgment.  Accordingly, Zilm is not entitled to judgment as a matter of law.

---

In a case cited by Zilm, Caton v. Trudeau (In re Caton), the Fifth Circuit applied Illinois preclusion law, which differs substantively from Texas law, to conclude that a garden-variety no-answer default judgment for libel had preclusive effect in a § 523(a)(6) proceeding.  Under Illinois law, "collateral estoppel may be applied to a default judgment provided no injustice results from the application."  Id., 157 F.3d 1026, 1029 (5th Cir. 1998).  Further, in Illinois, the party against whom preclusion is asserted must have had only a "full and fair opportunity to litigate the issue," and an "opportunity" is provided by notice of the hearing at which the default judgment is to be entered.  Id.  In Texas, however, the party asserting preclusion must show "the *facts* to be litigated in the second case *were fully and fairly litigated in the first*."  Madison v. Williamson, 410 B.R. 481, 485 (S.D. Tex. 2008) (emphasis added), *citing* In re Schwager, 121 F.3d 177, 181 (5th Cir. 1997) (applying Texas law).

[51]See, e.g., Shulman v. Lamphere (In re Lamphere), No. 10-6213, 422 F. App'x 741 (10th Cir. May 4, 2011).  In Lamphere, the Tenth Circuit affirmed a bankruptcy court's denial of issue preclusion in a § 523(a)(6) action where the debtor filed an answer and counterclaims in state court action and otherwise participated in the action until the discovery phase.  The Tenth Circuit found that a default judgment has no preclusive effect where debtor "simply stopped participating in the [state court] action."  Id. at 744 (predicting New Jersey preclusion law based on its adoption of RESTATEMENT § 27).  The Tenth Circuit contrasted the circumstances in Lamphere with those in Melnor, Inc. v. Corey (In re Corey), noting that collateral estoppel applied to a federal default judgment where "[t]he default was not entered because of [debtor's] failure to contest the issue but rather because his efforts in contesting it were abusive."  Id., 583 F.3d 1249, 1251 (10th Cir. 2009), *cert. denied*, 130 S.Ct. 1739 (2010).

## VI.    Rooker-Feldman

In Roberts' bill of review proceeding before the Texas state court, Zilm sought affirmative relief in the form of a declaration that "there was a full and fair litigation of each and every one of the facts set forth in the Final Default Judgment against . . . Roberts, . . . and the resulting award allowed for attorney's fees under the Texas Uniform Declaratory Judgments Act" and that "the Final Default Judgment . . . shall be issue preclusive as to the factual findings and conclusions set forth therein."[52] Relying upon the Rooker-Feldman doctrine, Zilm argues that Roberts can no longer defend against Zilm's offensive use of issue preclusion because the Texas state court determined in the Second Judgment that the Final Default Judgment "shall be issue preclusive."[53]

The Rooker-Feldman doctrine is irrelevant to this case for a variety of reasons.  First, Rooker-Feldman "precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court."[54]  In a nutshell, Rooker-Feldman stands for the proposition that lower federal courts do not have appellate jurisdiction over state court judgments, so state court "losers" cannot seek relief from the adverse judgment in federal court.[55]  While Roberts lost in state court, he is not the party that commenced this adversary proceeding, nor is he seeking

---

[52]Final Summary Judgment, ¶¶ 8 and 9.

[53]Supplement at 6.

[54]In re Miller, 666 F.3d 1255, 1261 (10th Cir. 2012), *citing* Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291-91 (2005).

[55]Exxon, 544 U.S. at 291-92 (only the United States Supreme Court has subject matter jurisdiction to review and overturn a state court judgment).

relief from the judgment.[56]  Zilm is the plaintiff herein and has the burden of proving his

§ 523(a)(2)(A) claim, and to the extent he seeks to prove fraud through issue preclusion, he

carries that burden also.  In objecting to summary judgment, Roberts is merely requiring Zilm

to meet his burdens.

Second, "[w]hen there is parallel state and federal litigation, Rooker-Feldman is not

triggered simply by the entry of judgment in state court."[57]  In such circumstances, a federal

court does not lose jurisdiction to determine an issue if a state court determines the issue first;

rather, the federal court retains jurisdiction and proceeds to determine to what extent the state

court judgment is preclusive.[58]  Because Zilm has not supplied this Court with a sufficient

record related to the Second Judgment, this Court cannot evaluate its preclusive effect.

Finally, because the declaratory judgment may be void as a result of a stay or

discharge violation, entering judgment in favor of Zilm based on any issue decided therein

is premature.

## VII.   Special Circumstances Exception

Roberts also claims that his absence from the Texas state court trial resulted from

justifiable reliance on his attorney's advice that the trial court would be enjoined by the

automatic stay imposed by the bankruptcy filing of Roberts Roofing & Construction, LP.

Essentially, he contends that such reliance deprived him of "an adequate opportunity or

---

[56]See Miller, 666 F.3d at 1261 (debtor lost in state court but was not the party seeking affirmative relief in bankruptcy court, so Rooker-Feldman did not apply).

[57]Exxon, 544 U.S. at 292.

[58]Id. at 293.

incentive to obtain a full and fair adjudication" in the Texas state court case.[59]  Whether Roberts' reliance on the bankruptcy stay, or on the advice of counsel, is a special circumstance warranting an exception from the general rule of issue preclusion need not be determined at this point, as Zilm has not succeeded in establishing that the Final Default Judgment was "actually litigated."

## VII.    Conclusion

For the reasons stated herein, Zilm's Motion for Summary Judgment should be and is hereby **denied**.

**SO ORDERED** this 20th day of February, 2014.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[59]RESTATEMENT § 28(5).  Section 28 is entitled "Exceptions To The General Rule Of Issue Preclusion" and states in pertinent part:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> *****
>
> (5) There is a clear and convincing need for a new determination of the issue . . . because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Id.